IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-191

Filed 5 February 2025

Mecklenburg County, No. 22 CVS 3540

SOUTHEASTERN PUBLIC SAFETY GROUP, INC. d/b/a SOUTHEASTERN
COMPANY POLICE, Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF JUSTICE, CRIMINAL STANDARDS
DIVISION, and RANDY MUNN, in his official capacity as the NORTH CAROLINA
COMPANY POLICE ADMINISTRATOR, Defendants.

Appeal by defendants from decision and declaratory judgment entered 10
August 2023 by Judge Steven R. Warren in Mecklenburg County Superior Court.
Heard in the Court of Appeals 22 October 2024.

*Everson Law Office, PLLC, by Cynthia E. Everson, for plaintiff-appellee.*

*Attorney General Jeff Jackson, by Solicitor General Fellows Mary Elizabeth
Reed and Trey A. Ellis, Deputy Solicitor General James W. Doggett, and
Assistant Attorney General Kristen Mallett, for defendants-appellants.*

ZACHARY, Judge.

This case arises from the construction of express toll lanes on the I-77
interstate highway ("the I-77 HOT Lanes Project"). Sugar Creek Construction, LLC
("SCC") hired Plaintiff Southeastern Public Safety Group, Inc.—a company police
agency commissioned under the Company Police Act ("the Act")—to provide policing
services in conjunction with SCC's construction work on the I-77 HOT Lanes Project.

During the course of construction, Defendant Randy Munn—the North Carolina Company Police Administrator—received information that Plaintiff was utilizing blue lights to block free-flowing traffic lanes on I-77. Thus arose the question of law that this case presents: did the Act authorize Plaintiff's activities?

Defendants considered Plaintiff to be in violation of the Act, and the administrative law judge agreed. Plaintiff then filed a petition for judicial review with the Mecklenburg County Superior Court; the superior court agreed with Plaintiff, vacated the administrative law judge's decision, and replaced it with the court's own order. Defendants now appeal from the decision and declaratory judgment of the superior court. After careful review, we vacate and remand.

## I.    Background

The facts of this case are not in dispute. We therefore recite only those facts necessary to resolve the question of law presented.

### A. The Company Police Act

The Act "regulates private police agencies, giving them authority similar to municipal or county police forces." *Pinnacle Special Police, Inc. v. Scottsdale Ins. Co.*, 607 F. Supp. 2d 735, 740 (E.D.N.C. 2009); *see also* N.C. Gen. Stat. § 74E-1 *et seq.* (2023). The Act provides company police officers with limited jurisdiction, as determined by the real property owned by or in the possession and control of their employer or a party who contracted with their employer:

> Company police officers, while in the performance of their

duties of employment, have the same powers as municipal and county police officers to make arrests for both felonies and misdemeanors and to charge for infractions on any of the following:

(1) Real property owned by or in the possession and control of their employer.

(2) Real property owned by or in the possession and control of a person who has contracted with the employer to provide on-site company police security personnel services for the property.

(3) Any other real property while in continuous and immediate pursuit of a person for an offense committed upon property described in subdivisions (1) or (2) of this subsection.

N.C. Gen. Stat. § 74E-6(c).

Pertinent to the case before us, company police officers are prohibited—with limited exception—from utilizing blue lights to obstruct free-flowing traffic on a public highway unless they are within the jurisdiction provided by § 74E-6(c). The Office of the Attorney General has promulgated regulations that prohibit company police officers from conducting the following activities:

(4) [A]ctivating or operating a blue light in or on any vehicle in this State except when operating a motor vehicle used primarily by company or railroad police in the performance of his official duties:

(a) when in property jurisdiction limitations specifically described under [N.C. Gen. Stat. §] 74E-6;

(b) when in continuous or immediate pursuit of a person for an offense committed upon real property owned by or in the possession or control

of his employer or real property or in the possession and control of a person who has contracted with the employer to provide on-site police security personnel services for the property; or

(c) during the transportation of an arrestee, which the company police agency has taken into custody;

(5) activating or operating a siren when operating any motor vehicle used primarily by any company police agency in the performance of his official duties when outside of the property jurisdiction limitations specifically described under [N.C. Gen. Stat. §] 74E-6 unless in immediate and continuous pursuit;

. . . .

(7) impeding traffic, stopping motorists or pedestrians, or in any manner imposing or attempting to impose his will upon another person as police authority unless:

(a) he is on the property specifically described under [N.C. Gen. Stat. §] 74E-6; or

(b) when in immediate and continuous pursuit of any person for an offense which occurred within the property jurisdiction limitations specifically described under [N.C. Gen. Stat. §] 74E-6 . . . .

12 N.C. Admin. Code 2I.0304(4)–(5), (7) (2024).

## B. The I-77 HOT Lanes Project

The North Carolina Department of Transportation ("NCDOT") contracted with I-77 Mobility Partners ("Mobility")—a consortium of corporate entities organized for the purpose of the I-77 HOT Lanes Project public-private partnership—to finance, design, build, operate, and maintain express toll lanes along a 26-mile stretch of I-77

between Statesville and Charlotte. The I-77 HOT Lanes Project was governed by a Comprehensive Agreement, in which NCDOT granted Mobility and its subcontractors a limited concession to enter the I-77 HOT Lanes Project property, but expressly provided Mobility "no fee title, leasehold estate, possessory interest, permit, easement or other real property interest of any kind":

> **2.1.2** From and after issuance of any NTP1,[1] [Mobility] and its authorized Developer-Related Entities shall have the right to enter onto the Project Right of Way owned by, or subject to the control of, NCDOT and, with the reasonable consent of NCDOT, other lands owned by NCDOT necessary for the purposes of carrying out the NTP1 Work. From and after issuance of NTP2, [Mobility] and its authorized Developer-Related Entities shall have the right to enter onto the Project Right of Way owned by NCDOT and, with the reasonable consent of NCDOT, other lands owned by NCDOT for the purposes of carrying out its obligations under the [Comprehensive Agreement] Documents. Absent agreement by the Parties as to a later date, [Mobility]'s rights to enter and use the Project Right of Way shall automatically terminate at the end of the Term.
>
> **2.1.3** Subject to Section 2.1.2, [Mobility] has no fee title, leasehold estate, possessory interest, permit, easement or other real property interest of any kind in or to the Project or the Project Right of Way by virtue of this Agreement, any of the other [Comprehensive Agreement] Documents or otherwise.
>
> **2.1.4** Subject to Section 2.1.2, [Mobility]'s property interests under this Agreement are limited to contract rights constituting intangible personal property (and not real estate interests). [Mobility]'s property interests under

---

[1] The Comprehensive Agreement defines "NTP1" and "NTP2" as written notices issued by NCDOT to the developer authorizing the developer to proceed with its contracted work.

this Agreement are solely those of an independent contracting party, and NCDOT and [Mobility] are not in a relationship of co-venturers, partners, lessor-lessee or principal-agent (except to the extent the [Comprehensive Agreement] Documents expressly appoint [Mobility] as NCDOT's agent for specified purposes).

Mobility identified SCC as the Design-Build Contractor in the Comprehensive Agreement. Consistent with applicable federal guidelines, NCDOT policy for the I-77 HOT Lanes Project required each contracted developer, such as SCC, to "[f]urnish Law Enforcement Officers and marked Law Enforcement vehicles to direct traffic in accordance with the contract." Specifically, the policy required the use of "uniformed Law Enforcement Officers and marked Law Enforcement vehicles equipped with blue lights mounted on top of the vehicle, and Law Enforcement vehicle emblems to direct or control traffic as required by the plans or by the Engineer."

## C. Plaintiff's Policing Services for SCC

On 19 July 2016, SCC entered into a contract with Plaintiff to provide policing services in accordance with the Act "[t]o any [NCDOT] property related to" the I-77 HOT Lanes Project in which SCC had "contracting or subcontracting authority." Plaintiff agreed to provide SCC "with policing/law enforcement services under" the Act, including "traffic control/enforcement[.]" In the project statement between SCC and Plaintiff, SCC identified the physical address of the I-77 HOT Lanes Project as: "I-77 from I-277 to Exit 36, and I-277 from I-77 to Exit 3A/B[.]"

On 27 March 2017, Defendant Munn received an email from Adam Tranum,

the operations manager for a private security agency in Charlotte, "about a violation that [he] witnessed." Tranum had noticed a pair of Plaintiff's marked vehicles with flashing blue-and-red lights on the sides of the travel lanes at various points of the I-77 HOT Lanes Project construction area. Based on his experience in private security, Tranum understood this to be a violation of the Act because "company police [are] not allowed to . . . direct traffic on public roadways."

Defendant Munn began investigating Tranum's complaint and contacted both Plaintiff and SCC. Plaintiff's Chief of Police Keith Williams and SCC's Safety Manager Jim Quinn each informed Defendant Munn that Plaintiff was under contract to provide policing services, including blocking the travel lanes in the I-77 HOT Lanes Project construction area. Defendant Munn informed both Plaintiff and SCC that Plaintiff's officers were limited to working inside of any barricaded work zones of the construction area and that it would violate the Act for a company police agency to utilize blue lights to block the travel lanes on a state-maintained highway. Defendant Munn also warned that the potential punishment for such a violation could include an immediate revocation of Plaintiff's certification as a company police agency under the Act. Chief Williams "agreed . . . to pull his folks off the job until DOJ came down with a ruling."

**D. Procedural History**

The foregoing facts have led to multiple lawsuits in state and federal courts. On 18 December 2017, Chief Williams filed a claim for damages under the Tort

Claims Act, but the Industrial Commission dismissed the matter for failure to state a claim upon which relief could be granted. *Williams v. N.C. Dep't of Justice, Crim. Standards Div.*, 273 N.C. App. 209, 210–11, 848 S.E.2d 231, 234 (2020). This Court affirmed the dismissal. *Id.* at 218, 848 S.E.2d at 239. Also, Plaintiff filed suit against Defendant Munn and others in federal court, which was likewise dismissed. *Se. Pub. Safety Grp. Inc. v. Munn*, No. 3:20-CV-00203-FDW-DCK, 2021 WL 3561184, at *1 (W.D.N.C. Aug. 11, 2021), *affirmed in part, vacated in part, and remanded*, No. 22-1114, 2024 WL 4625079 (4th Cir. Oct. 30, 2024) (unpublished).

Additionally, Chief Williams filed a foreign subpoena in Washington State directing Microsoft to produce certain logs for four DOJ email accounts. *Williams v. Custodian of Pub. Records NC Dep't of Justice*, 28 Wash. App. 2d 1022, 2023 WL 6214542, at *1 (2023) (unpublished). When Microsoft "completed its search for responsive records and found none[,]" Chief Williams filed a motion to compel and a motion for reconsideration, which were both denied. *Id.* Chief Williams's appeal was similarly unsuccessful. *Id.*

Plaintiff initiated the case before us on 20 March 2020 by filing a petition for a contested case hearing in the Office of Administrative Hearings. Plaintiff claimed that Defendant Munn deprived Plaintiff of rights and property; exceeded the scope of his authority; acted arbitrarily, capriciously, and erroneously; and failed to act as required by law.

In August 2020, the matter came on for hearing before an administrative law

judge. At the hearing, the administrative law judge made a series of rulings preventing Plaintiff from engaging in certain lines of questioning, such as asking Defendant Munn about the contract between NCDOT and SCC in order to determine the boundaries of the property that Plaintiff claimed it was authorized to police. The administrative law judge reasoned that Defendant Munn could not "testify about the contract" because Plaintiff could not obtain by contract any authority that it could not lawfully obtain under the Act, such as the authority to block the travel lanes of a public highway:

> Because you cannot -- because the issue is blocking the road. And if the law says you can't block the road it doesn't matter if a contract -- if you sign a contract -- let's take this and do something imaginary. Let's say there's a law that says you cannot own a purple kangaroo. Okay? You can't show me a contract that says, Well, I'm giving you a purple kangaroo because the law says no. So he can't talk about the contract. He can just talk about what's in the statute that's his area of responsibility.

The administrative law judge also prevented Plaintiff from introducing into evidence certain federal regulations that Plaintiff contended would support its argument concerning the definition of the "work zone" that it had contracted to police for SCC.

On 19 November 2020, the administrative law judge entered a final decision, determining that Plaintiff "admits and the evidence shows that [it] engaged in acts that are listed as prohibited acts in [12 N.C. Admin. Code 2I.0304(4), (5), and (7)] and that [Plaintiff] failed to show that its actions on the public highway of [I-77] complied with N.C. Gen. Stat. § 74E-6(c)." Accordingly, the administrative law judge concluded

that Plaintiff had failed to meet its burden of proof for its claims.

On 13 January 2021, Plaintiff filed a petition for judicial review in Mecklenburg County Superior Court. In part, Plaintiff alleged that it had discovered new evidence through a public-records request: an email sent on 17 July 2017 from Defendant Munn to his supervisor at DOJ, in which Defendant Munn detailed his phone conversation with a DOJ attorney. In this email, Defendant Munn explained that the DOJ attorney had suggested that NCDOT's contract with Mobility might allow a company police agency to perform policing services along the entire 26-mile stretch of the I-77 HOT Lanes Project; nevertheless, Defendant Munn cautioned his supervisor that DOJ attorneys had yet to fully complete their assessment. On 8 July 2021, the superior court entered an order vacating the final decision and remanding the matter to the administrative law judge to allow Plaintiff to present additional evidence related to this email.

This matter came on for hearing on remand before the administrative law judge on 2 December 2021. The additional evidence included not only the 17 July 2017 email but also an email that Defendant Munn sent to his supervisor the next day, in which Defendant Munn summarized a follow-up conversation with the DOJ attorney. In the 18 July email, Defendant Munn stated that "after much thought and conversation the conclusion is that [Plaintiff] would violate the Act if it work[ed] the I-77 construction zone and its duty included blocking travel lanes or any other police action on the [traveled] portion of the highway." The administrative law judge also

admitted into evidence the portion of the Comprehensive Agreement containing definitions and diagrams, as well as affidavits from SCC's Safety Manager Quinn and the DOJ attorney who consulted with Defendant Munn addressing the boundaries of the construction zone for the I-77 HOT Lanes Project.

On 3 February 2022, the administrative law judge entered a new final decision on remand. The administrative law judge found that the newly introduced emails were "part of an on-going discussion between [the DOJ attorney] and Defendant Munn about whether [Plaintiff] was in violation of" the Act, and that the additional evidence did "not support the argument that [Plaintiff] was not in violation of" the Act. Further, the administrative law judge determined that none of the additional evidence "refute[d] the conclusions of law" made in the previous final decision, and concluded that Plaintiff "still failed to meet its burden of proving that [Defendants] took any action that has substantially prejudiced [Plaintiff]'s rights by exceeding its authority or jurisdiction, acting erroneously, failing to use proper procedure, acting arbitrarily or capriciously, or failing to act as required by law or rule."

On 24 March 2022, Plaintiff filed a petition for judicial review of this final decision, as well as a complaint for declaratory judgment. On 10 July 2023, the matter came on for hearing in Mecklenburg County Superior Court. The superior court entered a decision and declaratory judgment in Plaintiff's favor on 10 August 2023.

The superior court first concluded that the administrative law judge erred by limiting Plaintiff's evidence and lines of questioning at the hearings, because the

contract between NCDOT and SCC was necessarily relevant to determining

Plaintiff's jurisdiction:

> 10. All the jurisdictional limits, and regulatory prohibitions, of company police agencies and officers are established by the real property owned or possessed and controlled by their employers or entities with whom they have contracts for law enforcement services. N.C. Gen. [Stat. § 74E-6(c)(1)–(3)].
>
> 11. At no point in [the Act] or in 12 [N.C. Admin. Code 2I.0304] are company police officers prohibited from impeding traffic, operating sirens, or operating blue lights, as long as they are within their real property jurisdictions as defined by their respective contracts.
>
> 12. It was impossible for the Administrative Law Judge to ascertain whether Plaintiff was complying with the provisions of Chapter 74E without admitting the full contract between . . . NCDOT and SCC, to determine whether . . . NCDOT had possession and control over I-77 and whether . . . NCDOT relinquished that possession and control to SCC for purposes of completion of the construction project between Exits 36 and 3A/3B on I-77.
>
> 13. The Administrative Law Judge's refusal to admit and consider the contract between . . . NCDOT and SCC, as well as her refusal to allow Plaintiff to question Defendant Munn about his review of the contract, was arbitrary and capricious, and was further based on unlawful procedure, since the contract itself sets forth the real property jurisdictional boundaries of Plaintiff and its law enforcement officers.

Because the administrative law judge considered the DOJ attorney's opinion

"about the language of the contracts at issue, without admitting the actual primary

contract itself," the superior court concluded that the administrative law judge's decision "violated Plaintiff's rights to Due Process and Equal Protection, was arbitrary and capricious, was an abuse of discretion, violated the best evidence rule of civil procedure, and was further based on unlawful procedure."

The superior court further concluded that the federal regulations proffered by Plaintiff were relevant and material to this case, and thus the administrative law judge's "refusal to consider federal law violated Plaintiff's rights to Due Process and Equal Protection, was arbitrary and capricious, and was further based on unlawful procedure." The superior court then concluded that Defendant Munn improperly interfered with Plaintiff's contract, due to his failure to consider the contract and the federal regulations:

> The uncontroverted evidence in the record is that Defendant Munn told Plaintiff that it could not block travel lanes in the project area on I-77 because, without consideration of the [federal regulations], he believed the parameters of the work zone were limited to the barricaded areas, despite his review of the contract language indicating otherwise. Since blocking travel lanes was required by Plaintiff's contract with SCC, Plaintiff was unable to continue working and, thus, lost property in that it ceased earning revenue on this and other NCDOT projects because of Defendant Munn's interpretation of Chapter 74E.

The superior court consequently determined that Plaintiff was an "aggrieved party" for purposes of the North Carolina Administrative Procedure Act ("APA"), and that the administrative law judge's conclusion otherwise was "unsupported by

substantial evidence, [wa]s arbitrary and capricious, and was an abuse of discretion." Additionally, the superior court determined that "[n]othing in Chapter 74E gives Defendant Munn the authority to interpret or invalidate a contract. As such, he acted outside the scope of his authority in interpreting the contracts at issue in this case and telling Plaintiff that its contract with SCC was invalid."

As to whether Plaintiff violated the Act, the superior court concluded that the Act (1) "does not prohibit company police agencies and officers from providing contract law enforcement services on streets, roads, or highways, as long as those streets, roads, or highways are within the ownership or possession and control of the entities with whom they have contracts for law enforcement services"; and (2) "does not prohibit company police agencies and officers from providing contract law enforcement services on federally-funded NCDOT work zones, including the free-flowing travel lanes, as long as those lanes are within the actual work zone as defined by the" Code of Federal Regulations ("CFR"). Finally, the superior court concluded that the pertinent federal regulations apply in this case:

> In interpreting Chapter 74E, Defendant Munn must defer to the definitions included in the [CFR] for federally-funded highway construction projects. As long as the company police agencies and its officers are working within the work zone as defined in the CFR, they are within their jurisdiction, and Defendant Munn cannot take any investigative or other action against them for this work.

Consequently, the superior court vacated the administrative law judge's final opinion in its entirety, and entered a new order "replac[ing]" the administrative law

judge's decision. Defendants timely filed notice of appeal.

## II. Discussion

On appeal, Defendants argue that the superior court erred by concluding that Plaintiff did not violate the Act. Specifically, Defendants contend that Plaintiff's "officers acted outside of their jurisdictional bounds," and that "[c]ontrary to the superior court's understanding, no federal law gave [Plaintiff] or its contractor [SCC] the possession and control of the highway needed for [Plaintiff] to have jurisdiction." For the reasons that follow, we agree with Defendants that the superior court's findings of fact do not support its conclusions of law regarding Plaintiff's alleged violations of the Act. Consequently, we vacate the superior court's decision and declaratory judgment.

Further, although Plaintiff raised additional procedural and evidentiary issues before the superior court, on appeal, Defendants only challenge the superior court's ultimate conclusions of law concerning whether Plaintiff violated the Act. Therefore, we remand to the superior court with instructions that the case be remanded to the administrative law judge for consideration of (1) the contract between NCDOT and SCC, and (2) the federal regulations, to the extent that they apply.

## A. Standard of Review

A party aggrieved by the final decision of an administrative law judge in a contested case has a right to judicial review by the superior court. N.C. Gen. Stat. § 150B-43. On review of a final decision of an administrative law judge, the superior

court has a limited scope of review under the APA. *Id.*

The APA sets the boundaries of the superior court's review of a final decision:

> The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under [N.C. Gen. Stat. §§] 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

*Id.* § 150B-51(b).

The APA provides a reviewing court with two different standards of review, depending on the nature of the challenge being addressed:

> With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

*Id.* § 150B-51(c).

When applying de novo review to alleged errors of law, a reviewing court

"considers the matter anew and freely substitutes its own judgment for that of the" administrative law judge. *Blackburn v. N.C. Dep't of Pub. Safety*, 246 N.C. App. 196, 207, 784 S.E.2d 509, 518 (citation omitted), *disc. review denied*, 368 N.C. 919, 786 S.E.2d 915 (2016). "Under the whole record test, the reviewing court must examine all competent evidence to determine if there is substantial evidence to support the administrative [law judge]'s findings and conclusions." *Id.* at 207, 784 S.E.2d at 517–18 (citation omitted).

"A party to a review proceeding in a superior court may appeal to the appellate division from the final judgment of the superior court as provided in [N.C. Gen. Stat. §] 7A-27." N.C. Gen. Stat. § 150B-52. "The scope of review to be applied by the appellate court under this section is the same as it is for other civil cases. In cases reviewed under [N.C. Gen. Stat. §] 150B-51(c), the [superior] court's findings of fact shall be upheld if supported by substantial evidence." *Id.*

"[O]ur appellate courts have recognized that the proper appellate standard for reviewing a superior court order examining a final agency decision is to examine the order for errors of law." *Harnett Cty. Bd. of Educ. v. Ret. Sys. Div., Dep't of State Treasurer*, 291 N.C. App. 14, 20, 894 S.E.2d 275, 280 (2023) (cleaned up), *disc. review denied*, 386 N.C. 348, 901 S.E.2d 790 (2024). "[T]his twofold task involves: (1) determining whether the [superior] court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.* (cleaned up).

**B. Analysis**

As an initial matter, we note that the superior court appears to have applied the correct standard of review—de novo—to the question of whether Plaintiff violated the Act by utilizing blue lights to block free-flowing traffic on a public highway, an alleged error of law. *See* N.C. Gen. Stat. § 150B-51(c). However, because the superior court did not correctly interpret the Act and its application to the facts of this case, we cannot say that the superior court properly applied the de novo standard of review. *See Harnett Cty. Bd. of Educ.*, 291 N.C. App. at 20, 894 S.E.2d at 280.

Fundamentally, this case concerns the jurisdictional provisions of the Act. There is no dispute that if Plaintiff exceeded its jurisdictional limits, as specifically set forth in the Act, then it would have been engaged in policing activities prohibited by 12 N.C. Admin. Code 2I.0304. Thus, the crux of the matter is whether Plaintiff acted within the real-property jurisdiction limitations of the Act.

In that Plaintiff has never claimed that it owned or had possession and control of the relevant portion of I-77, this case necessarily hinges upon whether the party with whom Plaintiff contracted—namely, SCC—owned or had possession and control of that property. *See* N.C. Gen. Stat. § 74E-6(c)(1)–(2). Significantly, however, the superior court never expressly found or concluded that SCC had such ownership, possession, or control, although the court made a series of findings and conclusions regarding other important procedural and legal issues in this matter.

Rather than focusing on the dispositive issue of whether Plaintiff or SCC owned, possessed, or controlled the free-flowing traffic lanes of the pertinent portion

of I-77, as required by N.C. Gen. Stat. § 74E-6(c)(1)–(2) in order to determine whether Plaintiff's actions violated 12 N.C. Admin. Code 2I.0304, the superior court instead focused primarily on two decisions below: the administrative law judge's failure (1) to allow Plaintiff to question Defendant Munn about the contract between NCDOT and SCC, and (2) to consider the various federal regulations proffered by Plaintiff in support of its jurisdictional argument. However, the superior court's analysis of these procedural issues—which Defendants do not challenge on appeal and therefore is not before us—is insufficient on its own to resolve the dispositive question of law and indicates that the superior court may have misinterpreted the jurisdictional requirements of the Act.

### 1. *Federal Regulations*

By the express terms of the Comprehensive Agreement that governs the I-77 HOT Lanes Project, NCDOT granted Mobility a concession. *See Concession, Black's Law Dictionary* (12th ed. 2024) (defining a "concession" as a "government grant for specific privileges"). Pursuant to this concession, Mobility and its subcontractors obtained a right of entry to designated areas of the I-77 HOT Lanes Project work zone. Nevertheless, the Comprehensive Agreement plainly states that the I-77 HOT Lanes Project property—including both the existing I-77 right-of-way and the additional property purchased for the project—is "owned by, or subject to the control of, NCDOT" and that Mobility received "no fee title, leasehold estate, possessory interest, permit, easement or other real property interest of any kind in or to" the

highway property. This language strongly suggests that neither Mobility nor SCC, as Mobility's design-build contractor, obtained the rights of ownership, possession, or control over the I-77 HOT Lanes Project that the Act requires in order to sanction Plaintiff's policing activity in this case.

However, the superior court accurately recognized that the Act "does not define real property[.]" Consequently, the superior court turned to the host of federal regulations proffered by Plaintiff to assist in its analysis and determined that they were relevant to this issue. The superior court then summarized these regulations in its conclusions of law:

> 16. For federally-funded highway constructions projects, the real property interest acquired by the contractor from the State department of transportation or other entity "must be adequate to fulfill the purpose of the [project]." 23 C.F.R. § 710.305(b).
>
> 17. For federally-funded highway constructions projects, a Right of Way Agreement must exist between the grantee of the federal funds, usually a State department of transportation, and any contractors or subcontractors. 23 C.F.R. § 710.405. These agreements must provide safety measures. One of those measures is a traffic management plan. 23 C.F.R. § 630.1012(b).
>
> 18. The cost of providing and paying uniformed law enforcement officers is generally to be borne by the contractor on the highway construction project. 23 C.F.R. § 630.1108(d)(2).

These conclusions concerning the applicability of the federal regulations to the case at bar formed the basis of the superior court's conclusion that the "refusal to

consider federal law violated Plaintiff's rights to Due Process and Equal Protection, was arbitrary and capricious, and was further based on unlawful procedure." But the superior court neglected to extend its analysis to reach the dispositive issue of whether (or how) federal law vested SCC with the necessary ownership, possession, or control of the highway property in question.

Indeed, it is not readily apparent how germane these conclusions of law regarding the federal regulations are to the legal question of whether Plaintiff exceeded its lawful jurisdiction under the Act. As Defendants observe in their appellate brief, "none of these cited regulations gave away NCDOT's possessory interests in the land or required NCDOT to do so."

For instance, Defendants note that the requirement that the contractor obtain an adequate property interest from NCDOT was satisfied by the concession granted to Mobility and its subcontractors, thereby entitling them to a right of entry to perform their contractual duties. But that concession was merely a right of entry, and by its own terms would not include any possessory interest that Mobility could have granted to SCC in turn. More to the point, the superior court never concluded that the application of this federal regulation to the facts of this case vested SCC with the ownership, possession, or control over the free-flowing traffic lanes of I-77 at issue necessary to authorize Plaintiff's actions under the Act.

Similarly, the fact that the federal regulations required NCDOT to have a Right of Way Agreement setting forth a traffic management plan does not, in and of

itself, provide blanket authorization for a *company police agency* to provide that traffic management, if providing such a service would violate the Act. As Defendants explain: "Because these regulations do not demand the use of *private* law enforcement agencies, the court erred in holding that they somehow required that [Plaintiff] be allowed to manage traffic." The superior court did not square the federal requirement for a traffic management plan with the Act's jurisdictional limitations when it evidently—but implicitly—concluded that Plaintiff had not exceeded its jurisdiction under § 74E-6(c).

The superior court's findings of fact do not explain whether or how the federal regulations proffered by Plaintiff could vest either SCC or Plaintiff with the ownership, possession, or control over the pertinent area of I-77 and therefore provide Plaintiff with the jurisdiction necessary to satisfy § 74E-6(c). Nor could the regulations provide an alternative basis for Plaintiff to satisfy the jurisdictional requirements of the Act, as explained above. Accordingly, the superior court's findings of fact regarding the cited federal regulations do not support the implicit conclusion that Plaintiff did not violate the Act.

### 2. *Contracts*

Just as the superior court's analysis of the federal regulations failed to resolve the dispositive question of law, so too did the superior court's contractual analysis. The superior court reasoned that Defendant Munn's admonition to Plaintiff that its officers "could not block the free-flowing travel lanes on I-77 but were restricted to

working in the barricaded-off areas" was apparently "inconsistent with Plaintiff's contractual obligations to SCC and essentially gutted the contract" between Plaintiff and SCC, because "under SCC's contract with . . . NCDOT and the governing federal regulations, SCC was required to provide traffic control on the free-flowing travel lanes of I-77 in the project area."

The same gap in the superior court's logic discussed above applies here: SCC's contractual obligation to provide traffic control does not furnish blanket authorization for *any agency with whom SCC contracted* to provide that traffic control. If a company police agency was engaged to provide such services, it would still have to comply with the limited jurisdictional authority granted by the Act. Accordingly, it does not necessarily follow that the contract did (or could) authorize Plaintiff's actions in this case.

It is well settled that a contract cannot authorize a party to violate the law. *See, e.g., Duke Power Co. v. Blue Ridge Elec. Membership Corp.*, 253 N.C. 596, 602, 117 S.E.2d 812, 816 (1961) ("When called upon to interpret a contract, courts seek to ascertain and give effect to the intent of the parties if that intent does not require the performance of an act prohibited by law."). Because Plaintiff's actions would have violated 12 N.C. Admin. Code 2I.0304(4)–(5) and (7) if the jurisdictional provisions of N.C. Gen. Stat. § 74E-6(c) were not satisfied, the only relevance of any contract in this matter would be to aid the tribunal in determining whether SCC obtained the requisite ownership, possession, or control over the 26-mile stretch of I-77 at issue.

But the superior court made no such determination; rather, it only concluded that the "refusal to admit and consider the contract between . . . NCDOT and SCC, as well as [the] refusal to allow Plaintiff to question Defendant Munn about his review of the contract, was arbitrary and capricious" and "based on unlawful procedure, since the contract itself sets forth the real property jurisdictional boundaries of Plaintiff and its law enforcement officers." This conclusion—and particularly, any blanket assertion that a contract alone might define a company police agency's jurisdictional limitations without determining whether the agency or its employer had sufficient ownership, possession, or control of the property that the agency was hired to police—does not resolve this case's dispositive question of law: namely, Plaintiff's jurisdiction under § 74E-6(c).

Ultimately, neither the federal regulations nor any contract can overcome the jurisdictional requirements set out by the plain text of the Act. Consequently, the superior court erred as a matter of law when it concluded:

> The uncontroverted evidence in the record is that Defendant Munn told Plaintiff that it could not block travel lanes in the project area on I-77 because, without consideration of the [federal regulations], he believed the parameters of the work zone were limited to the barricaded areas, despite his review of the contract language indicating otherwise. Since blocking travel lanes was required by Plaintiff's contract with SCC, Plaintiff was unable to continue working and, thus, lost property in that it ceased earning revenue on this and other NCDOT projects because of Defendant Munn's interpretation of Chapter 74E.

This conclusion—along with others like it in the superior court's decision and declaratory judgment—demonstrates a flawed reading of the Act and the effects, if any, that regulations and contracts have on the jurisdictional requirements of N.C. Gen. Stat. § 74E-6(c). The polestar of the jurisdictional analysis for the question presented by this case is whether SCC had the requisite ownership, possession, or control of the I-77 HOT Lanes Project work zone sufficient for SCC to permit Plaintiff to provide the policing services in question consistent with the Act. Because the superior court did not answer this question and, as a result, demonstrated a misunderstanding of the law at issue in this case, we cannot say that the court properly applied the de novo standard of review. *See Harnett Cty. Bd. of Educ.*, 291 N.C. App. at 20, 894 S.E.2d at 280.

### III.    Conclusion

In sum: although the superior court applied the proper de novo standard of review upon review of the administrative law judge's decision, we cannot say that the superior court applied that standard of review *correctly*. *See id.* The superior court's findings of fact and conclusions of law are insufficient to support its determination that Plaintiff was an "aggrieved party" under the APA. N.C. Gen. Stat. § 150B-43. And because the superior court erred as a matter of law in interpreting the Act, the superior court's decision and declaratory judgment must be vacated and remanded.

In light of the superior court's unchallenged determinations regarding the administrative law judge's evidentiary and procedural rulings, however, the proper

disposition is for the superior court to further remand this matter to the administrative law judge for reconsideration. On remand, the administrative law judge shall consider the contract between NCDOT and SCC, as well as the applicable federal regulations, in determining the scope of Plaintiff's jurisdiction pursuant to N.C. Gen. Stat. § 74E-6(c).

We therefore vacate the superior court's decision and declaratory judgment, which itself vacated the final decision of the administrative law judge, and remand to the superior court with instructions that the matter be remanded to the administrative law judge for further proceedings consistent with this opinion.

VACATED AND REMANDED.

Judges ARROWOOD and GORE concur.